UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HASSAN AMHIRRA,<br><br>　　　　　Plaintiff,<br>　v.<br><br>TAMMY FITTING, in her official capacity as Immigration Judge, et al.,<br><br>　　　　　Defendants. | CASE NO. 3:25-cv-05800-TL<br><br>ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER |

This matter is before the Court on Plaintiff Hassan Amhirra's Motion for Temporary Restraining Order ("TRO") and Order Re: Preliminary Injunction. Dkt. No. 4. Because the Court lacks subject-matter jurisdiction over Plaintiff's complaint, the Court DISMISSES the case and DENIES AS MOOT Plaintiff's motion.

## I. BACKGROUND

**A.    The Instant Matter (No. C25-5800)**

This case arises from the federal government's ongoing efforts to remove Plaintiff, "a citizen of Morocco who fled to the United States seeking protection." Dkt. No. 1 (complaint)

¶ 3. In two causes of action, Plaintiff pleads violations of his due process rights under the Fifth Amendment. *Id.* ¶¶ 71–117. Plaintiff seeks declaratory and injunctive relief—namely, a "declaration that Defendants' continued prosecution of removal proceedings against [Plaintiff] without providing a qualified interpreter in the Tamazight language (Aulouz dialect) violates the Fifth Amendment Due Process Clause and is unlawful"; and "[a]n order preliminarily and permanently enjoining Defendants (including their officers, agents, and subordinates) from continuing to adjudicate or prosecute [Plaintiff's] removal proceedings unless and until a competent interpreter in [Plaintiff's] primary language (Tamazight, Aulouz dialect) is made available." *Id.* at 17.

"[S]ince approximately September 15, 2024," Plaintiff has been detained by Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington. *Id.* ¶¶ 2, 4. Plaintiff avers that his "primary (and only fluent) language is Tamazight—specifically, the Aulouz dialect of the Tamazight (Berber) language spoken in Morocco." *Id.* ¶ 4. Plaintiff "has extremely limited proficiency" in any other language and, consequently, "cannot meaningfully communicate or understand proceedings conducted in English (or other common languages) . . . ." *Id.* ¶¶ 5–6.

After Plaintiff arrived in the United States in 2024, the Department of Homeland Security ("DHS") initiated removal proceedings against him. *Id.* ¶ 20. Because Plaintiff "could not communicate in English or any language for which an interpreter was readily available" (*id.* ¶ 21), "[n]o substantive progress in the case could be made" (*id.*). "On December 13, 2024, after months of unsuccessful efforts to find a suitable interpreter," an Immigration Judge terminated the removal proceedings without prejudice. *Id.* ¶ 25. Although the removal proceedings had been terminated, Plaintiff remained in ICE custody. *Id.* ¶ 32.

On July 17, 2025, "[a]fter an extended period of inaction," DHS reinitiated removal proceedings against Plaintiff. *Id.* ¶ 36. "DHS issued a new Notice to Appear ('NTA')—the charging document that begins removal proceedings—and filed it with the Immigration Court, thereby commencing a new removal case against [Plaintiff]." *Id.* ¶ 37. On July 18, 2025, Plaintiff filed a motion to terminate, "arguing that proceeding with the new case would be improper and unconstitutional for the same reasons that the prior case had been terminated." *Id.* ¶ 42.

Since reinitiating removal proceedings, the government has brought Plaintiff to Immigration Court three times, on each occasion without the attendance of a competent Tamazight (Aulouz Dialect) interpreter. At a master calendar hearing on July 31, 2025, the Immigration Judge "was unable to communicate with [Plaintiff] to either explain the proceedings, take pleadings, or conduct any substantive business." *Id.* ¶¶ 45–47. "The hearing ended in a continuance." *Id.* ¶ 48. On August 18, 2025, the Immigration Court "could not communicate with [Plaintiff] in any effective manner, and the hearing had to be continued without substantive progress." *Id.* ¶ 52. And on September 2, 2025, "the Immigration Judge could not communicate with [Plaintiff], take pleadings, or conduct any substantive business . . . ." *Id.* ¶ 58. At this hearing, Plaintiff renewed his motion to terminate. *Id.* ¶ 59. The Immigration Judge denied the motion. *Id.* ¶ 60. Plaintiff avers that, as of September 8, 2025 (the date of his pleading), "the reinitiated removal proceedings remain at a standstill," and that "[t]here is still no way for the Immigration Court to communicate with [Plaintiff], and thus no way to move forward toward a resolution of his case." *Id.* ¶¶ 64–65.

B.  **Plaintiff's Habeas Petition (No. C25-1376)**

Plaintiff is also seeking a writ of habeas corpus in a separate case in this Court, *Amhirra v. Warden*, No. C25-1376. Unlike the instant case, which targets the removal proceeding against

Plaintiff, the habeas action challenges the ongoing detention of Plaintiff.[1] *See generally* Petition, *Amhirra v. Warden* (July 22, 2025), Dkt. No. 1. There are two motions pending before the Court in Plaintiff's habeas action: a motion for preliminary injunction filed by Plaintiff, which is noted for consideration on September 17, 2025; and a motion to dismiss filed by the United States, which is noted for consideration on September 24, 2025.

## II.   DISCUSSION

Under Section 242 of the Immigration and Nationality Act ("INA"), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . ." 8 U.S.C. § 1252(g). The statute is read "narrow[ly]" and "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 487, 482 (1999)).

Plaintiff's complaint indicates that this case falls squarely within the purview of Subsection 1252(g). The complaint stems from DHS's "abruptly s[eeking] to reinitiate removal proceedings against [Plaintiff] in the summer of 2025." Dkt. No. 1 ¶ 36. "On or about July 17, 2025, DHS issued a new Notice to Appear ('NTA')—the charging document that begins removal proceedings—and filed it with the Immigration Court, thereby *commencing* a new removal case against [Plaintiff]." *Id.* ¶ 37 (emphasis added). Given the language of the statute and the Supreme

---

[1] The Respondent in Plaintiff's habeas corpus petition is "Warden, Northwest Detention Center." *See* Petition at 1, *Amhirra v. Warden* (July 22, 2025). "The Northwest ICE Processing Centers' Facility Administrator is employed by a private contractor, the Geo Group," and Plaintiff's "Petition does not name a federal entity." Motion to Dismiss at 1 n.1, *Amhirra v. Warden* (Aug. 27, 2025), Dkt. No. 16. The United States' participation in Plaintiff's Petition is as an "interested non-party." *Id.*

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 4

Court and Ninth Circuit's clear interpretation of that language, the Court cannot read the law so narrowly as to exclude this case from the statute's jurisdictional restriction. Simply put, this is a claim that arises from a decision or action to commence removal proceedings, and the INA bars the Court from hearing it.

Accordingly, this case is DISMISSED WITH PREJUDICE, and Plaintiff's motion is DENIED AS MOOT.

Dated this 9th day of September, 2025.

Tana Lin
United States District Judge